UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

NAVIGATORS INSURANCE COMPANY,

    Plaintiff,

v.

GABLES CONSTRUCTION, INC.,

    Defendant.

Civil Action No. TDC-19-1846

**MEMORANDUM OPINION**

Plaintiff Navigators Insurance Company ("Navigators") filed this civil action against Gables Construction, Inc. ("Gables"), seeking to recover money paid out by Navigators pursuant to an insurance policy held by Navigators's policyholder, Red Coats, Inc. Pending before the Court is Gables's Motion to Dismiss. ECF No. 26. Having reviewed the Complaint and the briefs on the Motion, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

In 2012, Upper Rock II, LLC ("Upper Rock"), a developer, entered into a contract with Gables to construct a multi-building apartment complex in Montgomery County, Maryland. The contract contained a waiver of subrogation provision under which the parties waived all rights to recover from one another for damages caused by fire to the extent covered by insurance. *See Gables Constr., Inc. v. Red Coats, Inc.*, 228 A.3d 736, 741 (Md. 2020). In 2014, Gables's parent company retained Red Coats, Inc. "to perform fire watch and security services" for the development during construction. Am. Compl. ¶ 36, ECF No. 21. Red Coats, Inc., in turn, secured

a commercial liability insurance policy from Navigators ("the Policy"), which provided umbrella and excess liability coverage. Condition 13 of the Policy provided: "If an insured has rights to recover all or part of any payment we have made under this insurance, the insured must preserve those rights and, at our request, pursue or transfer those rights to us. The insured must do nothing after an 'event' or 'occurrence' to impair them." Policy § IV(13), Compl. Ex. B, ECF No. 1-2.

During the night of March 31, 2014, a fire occurred at the apartment complex construction site and caused $22.15 million in property damage. In November 2014, Upper Rock filed suit in the Circuit Court for Montgomery County, Maryland against Red Coats, Inc. and its security officer on duty that night, Tamika Shelton (collectively, "Red Coats"), alleging that Red Coats was liable for the fire ("the State Court Action"). Red Coats then filed a third-party complaint in the State Court Action against Gables for contribution. Throughout the State Court Action, Navigators did not concede that the Policy covered the claims against Red Coats and proceeded "under a reservation of rights." Am. Compl. ¶ 44-46. For example, on April 29, 2016, Navigators sent a letter to Red Coats stating that "Navigators reserves all of its rights under Section IV.13" of the Policy. Navigators Letter to Red Coats at 4, Am. Compl. Ex. A, ECF No. 21-1.

In June 2016, Red Coats and Upper Rock executed a settlement agreement that resolved Upper Rock's claims against Red Coats ("the Settlement Agreement"). As part of that agreement, Red Coats conceded that it was a tortfeasor and paid Upper Rock $14 million, with Navigators paying $8 million "on behalf of" Red Coats. Am. Compl. ¶ 8. According to Navigators, it made its payment "under a full reservation of rights to recover from" Gables. *Id.* ¶ 50. The Settlement Agreement provided that the dismissal of the claims against Upper Rock would "not impair or affect" Red Coats's third-party claims against Gables. Settlement Agreement § F.2, Compl. Ex. D, ECF No. 1-4. The signatories to the Settlement Agreement on behalf of Upper Rock were

"Lion Gables Realty Limited Partnership, Managing Member," and "Gables GP LLC, its general partner." *Id.* at 10.

After reaching this settlement with Upper Rock, Red Coats amended its third-party complaint against Gables and its subcontractors, alleging that they were liable to Red Coats for contribution under the Maryland Uniform Contribution Among Joint Tort-Feasors Act ("UCATA"), Md. Code Ann., Cts. & Jud. Proc. §§ 3-1401 to -1409 (West 2020), which entitles a joint tortfeasor who "has paid more than a pro rata share" of common liability to contribution from the other joint tortfeasor, *id.* § 3-1402(b). *See Gables Constr., Inc.*, 228 A.3d at 739 (stating that Red Coats's suit sought "contribution under UCATA"). At trial, Red Coats was awarded a judgment of $7 million against Gables after the jury specifically found that Gables's negligence was a cause of the fire.

Gables appealed the judgment to the Court of Special Appeals of Maryland, which, on May 10, 2019, affirmed in part but reduced the judgment against Gables to $2 million. *See Gables Constr., Inc. v. Red Coats, Inc.*, 207 A.3d 1220, 1242 (Md. Ct. Spec. App. 2019), *rev'd*, 228 A.3d 736 (Md. 2020). Gables then sought review by the Court of Appeals of Maryland, arguing that it could not be liable for contribution to Red Coats because Gables's waiver of subrogation with Upper Rock contractually barred Red Coats's claim under UCATA. *See Gables Constr., Inc.*, 228 A.3d at 743. In a May 26, 2020 opinion, the Court of Appeals reversed the judgment on the grounds that the contractual waiver of subrogation rendered Gables not "liable in tort" to Upper Rock, and that as a result, Red Coats was not a "joint tortfeasor" as required to support a claim for contribution under UCATA. *Id.* at 759-60.

On June 21, 2019, after the ruling by the Court of Special Appeals, Navigators filed suit in this Court. In its Amended Complaint, filed on February 5, 2020, Navigators asserts two causes

3

of action against Gables. Count I seeks contribution from Gables under UCATA. Count II asserts a claim of unjust enrichment, in which Navigators alleges that Gables was unjustly enriched because the settlement payment reduced Gables's "potential liability" to Upper Rock and because it is "inequitable" to allow Gables, as a corporate affiliate of Upper Rock, to retain Navigators's settlement payment and thereby "benefit from its own wrongdoing." Am. Compl. ¶¶ 80, 88, 92. Navigators asserts that Count II "is brought on its own behalf and not as a subrogee" of Red Coats. *Id.* ¶ 16.

In light of the ruling by the Maryland Court of Appeals that Gables is not liable for contribution to Red Coats, Navigators has agreed to dismiss the contribution claim. Am. Opp'n Mot. Dismiss ("Opp'n") at 1 n.2, ECF No. 33. Accordingly, the Court will address only the unjust enrichment claim.

## DISCUSSION

In its Motion to Dismiss, Gables asserts several grounds for dismissal of Navigators's claim for unjust enrichment. First, Gables argues that Navigators's payment did not reduce Gables's liability to Upper Rock and thereby confer a benefit on Gables, a requirement for unjust enrichment, because Gables was never liable to Upper Rock, as the Maryland Court of Appeals ruled. Second, Gables argues that based on Red Coats's litigation of its third-party complaint against Gables in the State Court Action, *res judicata* and collateral estoppel bar Navigators's suit. Third, Gables argues that Navigators may recover from Gables only as a subrogee of Red Coats and may not bring an unjust enrichment claim against anyone other than Red Coats. Navigators opposes the Motion. Because the Court finds that *res judicata* bars Navigators's claim for unjust enrichment, the Court need not address Gables's other arguments for dismissal.

## I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

On a Rule 12(b)(6) motion, documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court may therefore consider the Policy and the Settlement Agreement, both of which were attached to the Complaint. Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). When considering a Rule 12(b)(6) motion based on *res judicata*, the courts may "take judicial notice of facts from a prior judicial proceeding" when the assertion of preclusion as a defense "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Accordingly, the Court will take judicial notice of the proceedings in the State Court Action.

## II. *Res Judicata*

Gables argues that *res judicata* bars Navigators's claim for unjust enrichment. Under Maryland law, *res judicata* mandates that "a judgment between the same parties and their privies

5

is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." *deLeon v. Slear*, 616 A.2d 380, 385 (Md. 1992) (quoting *Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961)); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (holding that the "preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered"). *Res judicata* functions "to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *deLeon*, 616 A.2d at 385 (quoting *Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 503-04 (Md. 1989)). *Res judicata*, or claim preclusion, applies when (1) the parties in the present suit are the same or in privity with the parties to the first suit; (2) the current suit presents the same cause of action or claim as the first suit; and (3) the first suit produced "a valid final judgment on the merits." *FWB Bank v. Richman*, 731 A.2d 916, 927 (Md. 1999) (quoting *deLeon*, 616 A.2d at 385). New causes of action "in the second lawsuit on the same set of facts" are barred by *res judicata*. *Bank of New York Mellon v. Georg*, 175 A.3d 720, 756 n.9 (Md. 2017); *deLeon*, 616 A.2d at 385.

### A. Same Parties

*Res judicata* binds a party in a second suit who was a party to, or in privity with a party to, the first suit. *Georg*, 175 A.3d at 744-45. Privity is a relationship between two parties that have a "legally recognized interest in the same subject matter." *Id.* at 744 (quoting *Privity*, Black's Law Dictionary (10th ed. 2014)). "[P]rivity is no talismanic concept. . . . It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough

to include that other within the res judicata." *United States v. Manning Coal Corp.*, 977 F.2d 117, 121 (4th Cir. 1992) (citation omitted)).

Under Maryland law, for purposes of *res judicata*, a nonparty in a prior lawsuit is "in privity" with a party in that lawsuit when one party is "so identified in interest with another" that it "represents the same legal right." *Georg*, 175 A.3d at 744 (quoting *FWB Bank*, 731 A.2d at 930). Privity exists for persons or entities that are not formal parties to a lawsuit but have "a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution," or are "so far represented by another that their interests receive actual and efficient protection." *Ugast v. La Fontaine*, 55 A.2d 705, 708 (Md. 1947); *Georg*, 175 A.3d at 745 (quoting *Ugast*, 55 A.2d at 708).

Maryland courts have recognized the principle that when an insurance company has a contractual right of subrogation to an insured party's claims, the insurer and insured are in privity. *See Poteet v. Sauter*, 766 A.2d 150, 160, 164 (Md. Ct. Spec. App. 2001); *Lake v. Jones*, 598 A.2d 858, 861 (Md. Ct. Spec. App. 1991) (stating that "[t]here is no question but that [the insurer] and [its insured] were in privity" where the insurer's claim was "based upon its contractual right of subrogation"). In *Poteet*, the court concluded that where an insurance company had partial subrogation rights such that both it and its policyholder retained rights in a claim under the policy, the insurer and the policyholder were "in privity." *Poteet*, 766 A.2d at 160, 165. Accordingly, after a judgment was entered in a lawsuit between the policyholder and the other driver in a car accident, even one in which the insurance company had not been joined as a party, *res judicata* would bar a subsequent suit by the insurance company against the other driver for "any future claim" that "would arise from the same incident." *Poteet*, 766 A.2d at 160, 165. Likewise, here, Navigators had subrogation rights under the Policy, as acknowledged in the Amended Complaint,

7

and in fact originally sought in this case "contribution as subrogee of its insured[] Red Coats." Am. Compl. at 1. Although Navigators was not a party to the State Court Action, the third-party complaint in that case was between Navigators's insured, Red Coats, and an alleged tortfeasor, Gables, and related to the fire and the right to secure contribution from Gables for settlement payments made to Upper Rock based on the fire damage. Red Coats and Navigators are therefore in privity for purposes of claims arising from the "same incident," including the unjust enrichment claim. *Poteet*, 766 A.2d at 165.

Navigators nevertheless asserts that it was not in privity with Red Coats for purposes of its unjust enrichment claim because "that claim is not brought as a subrogee of Red Coats." Opp'n at 14. Navigators provides no support for the assertion, and the Court is aware of no authority stating, that an insurer that had subrogation rights may avoid privity merely by pleading that it seeks to sue in its own right. Moreover, the relationship between Navigators and Red Coats meets the general test for privity in that in this instance, they were "so identified in interest" that Red Coats effectively represented "the same legal right." *Georg*, 175 A.3d at 734, 746-47 (finding that a loan servicer and former note holder, a successor-in-interest note holder, and a title insurance company were all in privity for purposes of litigation relating to an alleged mistake in a deed of trust); *deLeon*, 616 A.3d at 389 (finding that an employer and its employees were in privity for purposes of defending against a defamation claim based on statements by the employees).

In particular, Navigators had a "direct interest" in the State Court Action and either controlled the suit's prosecution or was represented by Red Coats such that Navigators's "interests receive[d] actual and efficient protection." *Ugast*, 55 A.2d at 708. First, Navigators had a direct interest in Red Coats's third-party claims against Gables in the State Court Action. Navigators had contributed $8 million to Red Coats's $14 million settlement with Upper Rock. In the third-

8

party complaint, Red Coats sought contribution from Gables for the settlement payments and initially secured a judgment of $7 million, which exceeded the amount actually paid by entities other than Navigators. *See Gables Constr., Inc.*, 228 A.3d at 742. Where Navigators had "made its settlement payment" and "proceeded at all times" pursuant to "a reservation of rights," Am. Compl. ¶¶ 44, 50, it had a direct interest in the State Court Action because it could reasonably claim to be entitled to funds from such a judgment that effectively constituted reimbursement for certain amounts actually paid out by Navigators. Moreover, since Navigators had reserved its rights to seek to recover the amount of its payments under the Settlement Agreement, it had a direct interest in favorable rulings in the State Court Action on the issues of Gables's liability for the fire and on whether the waiver of subrogation provision of the contract with Upper Rock precluded liability and thus contribution under UCATA.

Second, Red Coats effectively represented the interests of Navigators such that they received "actual and efficient protection." *Georg*, 175 A.3d at 745. Under the Policy, Red Coats was obligated to preserve Navigators's "rights to recover all or part of any payment" it made, to "do nothing" that would "impair" those rights, and to "pursue or transfer" those rights at Navigators's request. Policy § IV(13). Consistent with this obligation, in the Settlement Agreement, Red Coats preserved the right to pursue in the State Court Action the third-party claims against Gables, and Red Coats's contribution claim to recover from Gables as a joint tortfeasor the pro rata portion of the amount paid under the Settlement Agreement was an action that, if successful in its legal arguments, would serve to preserve Navigators's right to recover its own payment. *See Gables Constr., Inc.*, 228 A.3d at 741-42. Thus, Red Coats was legally obligated to act in the State Court Action in a way that would protect Navigators's interests.

9

Moreover, in practice, Red Coats acted in such a manner. After settling with Upper Rock, Red Coats secured a $7 million jury verdict on its contribution claim—an amount that was half of the total payments under the Settlement Agreement—and successfully defended the right of contribution before the Maryland Court of Special Appeals, even as the judgment was reduced by that court. *Gables Constr., Inc.*, 207 A.3d at 1224, 1242. It then defended the legal rulings underlying its contribution claim before the Maryland Court of Appeals, including on the novel issue of whether a party may seek contribution from a joint tortfeasor who was negligent but not "legally responsible" in light of a contractual waiver of claims covered by insurance. *Gables Constr., Inc.*, 228 A.3d at 738, 742-43. Navigators has neither alleged nor argued that Red Coats failed to prosecute the State Court Action in an adequate manner through every level of the Maryland state court system for nearly half a decade. *See id.* at 736, 741; *Georg*, 175 A.3d at 734, 747 (finding that two banks were in privity because the second bank's interests were adequately protected by the first bank's "prosecution of litigation," even though the first bank did not produce sufficient evidence to meet the burden of production at trial and failed to timely appeal).

Significantly, throughout the State Court Action, Red Coats and Navigators "share[d] the same incentive in their separate litigation attempts.'" *Georg*, 175 A.3d at 747 (quoting *Warner v. German*, 642 A.2d 239, 243 (Md. Ct. Spec. App. 1994)). After the Settlement Agreement, Red Coats's sole litigation interest was to recover from Gables, the same interest now advanced by Navigators. *See id.*; *see also Warner v. German*, 642 A.2d 239, 244 (Md. Ct. Spec. App. 1994) (finding that parties lacked privity where the plaintiff in the second action did not have "the same incentives" in litigation). That interest included preventing unjust enrichment, as Red Coats, not Navigators, was the actual party to the Settlement Agreement and thus had the same interest in

preventing "the entity whose active negligence primarily caused" the damage from receiving a potential monetary benefit from the settlement. Am. Compl. ¶ 89.

Because Navigators had a direct interest in the State Court Action, its interests were aligned with those of Red Coats, and Red Coats adequately and efficiently prosecuted that case, Navigators is in privity with Red Coats with respect to the State Court Action. The first requirement for *res judicata* has been satisfied.

### B. Same Cause of Action

For purposes of *res judicata*, cause of actions or claims are the "same" when they arise from the same transaction or series of connected transactions. *deLeon*, 616 A.2d at 389-90; *Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238-39 (Md. 1987). Whether two claims arise from the same transaction must be "determined pragmatically" by assessing whether the facts "are related in time, space, origin or motivation," or "form a convenient trial unit." *Bilbrough*, 525 A.2d at 238 (citation omitted). Where claims are based on facts that "occurred over the same period of time, in the same place, and had essentially the same origin and motivation," they arise from the same transaction. *deLeon*, 616 A.2d at 391.

Here, Navigators's unjust enrichment claim and Red Coats's contribution claim asserted in the State Court Action arise from the same transaction or series of transactions, specifically the March 31, 2014 fire and the resulting Settlement Agreement. Indeed, a subrogation claim for contribution, as originally asserted by Navigators, and an unjust enrichment claim consist of "overlapping theories" that are "closely related." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 357 n.15 (Md. 2007). The contribution claim is grounded in the facts that there was a fire for which Red Coats and Gables were arguably jointly responsible, but only Red Coats paid into the Settlement Agreement with Upper Rock. *See Gables Constr., Inc.*, 228 A.3d at 738-39

(stating that a "right of contribution" claim arises "where one wrongdoer has paid damages and has discharged the injured party's claim" and provides "the right to recover a pro rata share of damages from another legally responsible party"). Similarly, Navigators's unjust enrichment claim derives from the same fire for which Gables was arguably jointly responsible and Red Coats's settlement payment to Upper Rock without any contribution from Gables. Navigators's first theory of unjust enrichment is that the Gables unjustly derived a benefit from the Settlement Agreement because the "settlement payment reduced the potential liability" of Gables to Upper Rock, Opp'n at 16, a theory predicated entirely on Gables's alleged liability for the fire and its failure to contribute to the settlement payment from Red Coats to Upper Rock. Navigators's second theory of unjust enrichment, that Gables actually received an unjust monetary benefit because the settlement payment was made to its corporate affiliate, Upper Rock, *see id.* at 17, is also based on the payment under the Settlement Agreement without reimbursement from Gables and its unfairness as a result of Gables's alleged liability for the fire. Notably, the corporate affiliation between Upper Rock and Gables, and the interrelationships among Gables's corporate affiliates, were the subject of evidence presented in the State Court Action. *See Gables Constr., Inc*, 207 A.3d at 1224 n.1, 1242 (describing evidence that Upper Rock and Gables shared the same business address and specific testimony on Gables's corporate affiliations). Further, where Navigators argues that the inequity of the alleged benefit to Gables derives in part from Gables's use of "contractual waivers," Opp'n at 20, it is evident that both the contribution claim asserted in the State Court Action and the present unjust enrichment claim also relate to a common contractual provision—the waiver of subrogation provision—that was the subject of evidence in the State Court Action. *See Gables Constr., Inc.*, 207 A.3d at 1241. The two claims therefore also occupy the same convenient "trial unit." *Bilbrough*, 525 A.2d at 239. Thus, the unjust enrichment claim,

however characterized, originates from the same transactions, at the same time and place, as Red Coats's State Court Action: the fire, the alleged joint liability of Red Coats and Gables, and the subsequent settlement payment by Red Coats. The second element of *res judicata* is satisfied.

### C. Final Judgment on the Merits

*Res judicata* also requires a "valid final judgment on the merits by a court of competent jurisdiction." *deLeon*, 616 A.2d at 385. A trial court's ruling constitutes a final judgment when it is "an unqualified, final disposition of the matter in controversy." *Georg*, 175 A.3d at 750 (quoting *Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138, 145 (Md. 2009)). After a jury trial in the State Court Action, the Circuit Court entered a judgment against Gables for $7 million. *See Gables Constr., Inc.*, 228 A.3d at 742. Gables appealed that judgment to the Court of Special of Appeals, and the Maryland Court of Appeals ultimately reversed the judgment and held that "Red Coats cannot prevail on a claim of contribution." *Id.* at 759-60; *see also Addison*, 983 A.2d at 144-45 (noting that a Maryland appellate court generally may only hear an appeal from a final judgment). Where the Circuit Court entered a final judgment on the merits, and the subsequent appeals led to an invalidation of that judgment based on a substantive legal ruling by the highest court of the State of Maryland, there can be no doubt that there has been "an unqualified, final disposition of the matter" resulting in a "final judgment on the merits by a court of competent jurisdiction." *Georg*, 175 A.3d at 750; *deLeon*, 616 A.2d at 385.

Navigators does not contest the validity or finality of the judgment in the State Court Action and instead argues that the final judgment element of *res judicata* is not met because there was not "a final judgment on an unjust enrichment claim." Opp'n at 14. As discussed above, however, *res judicata* does not require a final judgment in the first action on the exact claim raised in the second action. *See deLeon*, 616 A.2d at 385. Rather, it bars "all matters which . . . could have

13

been litigated in the first suit." *Id.* Because there was a final, valid judgment on the merits in the State Court Action, and the unjust enrichment claim could have been asserted in that case, the third element of *res judicata* is met.

Having concluded that Navigators was in privity with Red Coats, Navigators's unjust enrichment claim arises from the same transactions as Red Coats's contribution claim in the State Court Action and could have been asserted in that case, and the State Court Action resulted in a final, valid judgment on the merits, the Court finds that *res judicata* precludes Navigators from litigating the instant claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Gables's Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date: December 15, 2020

THEODORE D. CHUANG
United States District Judge

14